UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT JACQUEMAIN,

    Defendant.
_____/

Case No. 03-80863

Honorable Nancy G. Edmunds

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ROBERT JACQUEMAIN'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c) [124]**

On June 25, 2004, Defendant Robert Jacquemain was convicted by a jury of Count Two of the Second Superseding Indictment, charging him with conspiring to obstruct justice in violation of 18 U.S.C. §§ 371 and 1512. The charges arose out of the July 27, 2002 arrest of Robert Paxton, which initiated from a road rage incident on Gratiot Avenue in Mt. Clemens involving an off-duty Mt. Clemens police officer. Defendant Robert Jacquemain, a Mt. Clemens police officer, was involved in the arrest of Robert Paxton.

Defendant now moves for judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c), arguing that there was insufficient evidence to support his conviction of conspiring to obstruct justice in violation of 18 U.S.C. §§ 371 and 1512. For the reasons stated below, Defendant Robert Jacquemain's motion is DENIED.

**I.     Analysis**

    **A.  Standard of Review - Rule 29 - Sufficiency of the Evidence**

"In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).  The court does not independently weigh the evidence or assess the credibility of trial witnesses.  *Id.*  It must, however "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established."  *United States v. Fusero*, 106 F. Supp.2d 921, 926-27 (E.D. Mich. 2000) (internal quotation marks and citation omitted).

    **B.  Defendant's Conviction for Conspiracy to Obstruct Justice**

To prevail on his Rule 29 motion, Defendant must show that, even when "viewing the evidence in a light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Talley*, 164 F.3d at 996 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Defendant Robert Jacquemain has not satisfied this burden and thus his motion is denied.

To obtain a conviction for conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 and 1512, the government must prove three elements beyond a reasonable doubt. The first element is that two or more persons conspired, or agreed, to commit the crime of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), which makes it a crime to knowingly engage in misleading conduct to another person with the intent to hinder, delay or prevent the communication of truthful information to a federal law enforcement official

or federal judge about the commission or possible commission of a federal offense. The second element is that Defendant knowingly and voluntarily joined the conspiracy. The third element is that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy. *See* Sixth Circuit Pattern Jury Instruction 3.01A.

Considering the evidence at trial in the light most favorable to the government, this Court concludes that there was sufficient evidence to support Defendant Robert Jacquemain's conviction for conspiring to obstruct justice by joining an agreement to suppress the truth about the justification for and use of force in the arrest of Paxton in violation of the Fourth Amendment and the possible commission of a federal criminal civil rights offense under 18 U.S.C. § 242, deprivation of civil rights under color of law.

There was evidence at trial that Paxton was pulled from his pick-up truck, thrown to the ground, and restrained by Defendant Robert Jacquemain and four or five other uniformed Mt. Clemens police officers. (Brian Pike, 6/18/04 Tr. at 83-85; Foltz, 6/17/04 Tr. at 145.) Various witnesses testified of seeing arms moving up and down in a punching motion, and of seeing a body assuming a protective fetal-position like posture, to ward off blows to the body. There was testimony from civilian witnesses, Brian Pike (passenger in off-duty Officer Hey's car), Duane Poucher and Robert Paxton that an officer or officers struck repeated blows to Paxton's head. Duane Poucher, one of the Mt. Clemens police officers involved in the arrest, testified that he repeatedly kicked Paxton, that at no point was Paxton the aggressor, and that Paxton in no way posed any threat to the officers. (Poucher, 6/10/04 Tr. at 82-83.) Civilian witnesses corroborated this testimony. The jury, rejecting an argument that the Defendant Officers reasonably perceived a significant threat

of violence from Paxton, found Defendant Officer Carson guilty of a federal crime; i.e., depriving Paxton of his civil rights under color of law by using excessive force in his arrest.

There was also evidence at trial that Defendant Robert Jacquemain joined in an agreement to lie to cover-up that federal crime.  Despite Defendant's arguments to the contrary, there was trial evidence that the agreement was to say that Paxton was the aggressor during his arrest, not simply that he voluntarily exited his vehicle.  There was also evidence that Defendant was a party to this agreement to mislead others and to suppress the truth about the use of force in Paxton's arrest.  For example, there was evidence that Defendant Robert Jacquemain:  (1) assisted in restraining Paxton, who was hit and kicked by Officers Carson and Duane Poucher while restrained; (2) rode back to the police station with Officer Carson; and (3) once back at the police station, instructed Duane Poucher that "we're going to say that he got out of the car, we're going to say he came at us" (6/10/04 Tr. at 89-90).  Poucher testified that he knew the story was false (6/10/04 Tr. at 96), and that the purpose for providing the false story was to avoid being held accountable for committing a federal offense.  He understood Defendant Robert Jacquemain's "we're going to say" comment to mean, "[b]asically, we need to say he [Paxton] was the aggressor so that we don't get in trouble for beating him up. . . . [b]ecause it is illegal for a police officer, or police officers to assault citizens.  It's called under the color of law. . . .  It's a federal law. . . . it's acting under the color of law when you assault somebody, meaning you're a police officer."    (Poucher, 6/10/04 Tr. at 90.)

Poucher's testimony, when construed in the light most favorable to the government, supports the conclusion that Defendant Robert Jacquemain enlisted Poucher in a scheme that was already underway and involved at least one other person.  The goal of the

4

agreement was to have the Officers provide consistent, false and misleading information portraying Paxton as the aggressor and thus making it look like the force the police used on Paxton was lawful because they were responding to a reasonably perceived threat. Defendant Robert Jacquemain's police report, his preliminary examination testimony, and his responses during an interview with FBI Agent Ray Foltz  (Foltz, 6/17/04 Tr. at 146), describe Paxton's arrest in a way that was contradicted at trial by the testimony of civilian witnesses,  Officer Duane Poucher, and Brian Pike.  Co-Defendant Officer Carson's and Officer Duane Poucher's police reports similarly described Paxton's arrest in a way that was contradicted by trial testimony from civilian witnesses, Officer Duane Poucher and Brian Pike.

Despite Defendant's arguments to the contrary, there is sufficient evidence to conclude that Poucher joined the agreement to lie about Paxton being the aggressor and the use of excessive force in his arrest.  At trial, Poucher testified that he agreed to lie to cover-up the use of excessive force; e.g., his testimony that, "I just went along with the program and eventually wrote my report, my police report to reflect what I was told. . . .  I was told words to the effect that we're going [to] say that he came at us, he got out of the car, he came at us, and again based on what happened out there, I would imagine, . . . I'd imagine he suffered physical injury, so going along with the program would be to stick to what was suggested to me and write that in my police report as well. . . . If he got out of the car and charged and was actually the aggressor in the situation, force and physical injuries to Paxton to an extent probably would have been justified . . ." (Poucher, 6/10/04 Tr. at 91-93.)

Viewing this evidence in the light most favorable to the government and allowing the government the benefit of all reasonable inferences, the Court is not convinced that no rational jury could find Defendant guilty beyond a reasonable doubt of conspiring to obstruct justice in violation of 18 U.S.C. §§ 371 and 1512.

## III.  Conclusion

For the foregoing reasons, Defendant Robert Jacquemain's motion for acquittal is DENIED.


                    s/NANCY G. EDMUNDS
                    Nancy G. Edmunds
                    U.S. District Judge

Dated: April 29, 2005